IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2000 Session

## GINGER TURNER VOOYS v. ROBERT PHILLIPS TURNER, JR.

**Direct Appeal from the Circuit Court Davidson County**
**No. 91-D-1377   Walter C. Kurtz, Judge**

_____

**No. M1999-00504-COA-R3-CV - Filed February 14, 2001**

_____

The sole issue presented in this appeal is the propriety of the trial court's award to Wife of postjudgment interest on funds Husband deposited in the office of the clerk of the trial court prior to the appeal of the final order divorcing the parties. The funds represent the purchase price of the marital residence which had been awarded to Wife. Exercising an option to purchase the house, Husband deposited $185,000 with the court clerk and tendered it in open court. Then Husband appealed various portions of the final order, including the award of the house to Wife; he also moved to stay the execution and enforcement of that and other portions of the judgment without paying a bond on the ground that the funds he had already deposited should relieve him of the necessity of posting an additional bond. The motion also requested that the funds be placed in an interest bearing account. The stay of execution was granted, but the motion to deposit at interest was never ruled upon. After the trial court's judgment was affirmed on appeal, Wife filed a motion seeking interest on all money judgments rendered against Husband. The trial court found that Wife was entitled to postjudgment interest on the $185,000. Husband then commenced this appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, Jr., J. joined.

David S. Zinn, Brentwood, Tennessee, for the appellant, Robert Phillips Turner, Jr.

Phillip E. Smith, Nashville, Tennessee, for the appellee, Ginger Turner Vooys.

### OPINION

This is the second time these parties have been before this court on matters relating to their divorce. In the sole issue raised in this appeal, Robert Phillips Turner, Jr. ("Husband") challenges the trial court's decision to award to his former wife, Ginger Turner Vooys ("Wife"), postjudgment interest on funds Husband deposited in the office of the clerk of the trial court prior to the initial appeal in this case. For the following reasons, we affirm.

After an eleven year marriage, Wife sought a divorce, which Husband contested. The trial court awarded Wife a divorce on the ground of inappropriate marital conduct and granted her custody of the children. *See Turner v. Turner*, No. 01A01-9506-CV-00255, 1997 WL 136448 at *1 (Tenn. Ct. App. Mar. 27, 1997) (no Tenn. R. App. P. 11 application filed). The final decree of divorce, entered October 5, 1994, was the result of several hearings, and stated, in pertinent part:

> It is further ordered that the Wife is awarded the Husband's separate real property and the marital appreciation therein, located at 1210 Nichol Lane, Nashville, Tennessee 37205, as alimony *in solido*, which the Court finds to have a fair market value of $187,000.00. The Husband shall quitclaim his interest in said property to the Wife, and the Wife shall be allowed to place said property on the market for sale with a closing date no sooner than sixty (60) days from the date of the entry of this final judgment. In the event the wife receives funds in excess of $187,000.00 from the sale of said property, she shall be allowed to retain any and all said funds.

> It is further ordered that the Husband shall have the option of purchasing the Wife's interest in said property for $185,000.00, within sixty (60) days, and that he shall notify the Wife in of his intent to do so within fifteen (15) days of the hearing date.

Before entry of this final order, but after oral rulings by the court in earlier hearings to the same effect, Husband deposited $185,000 with the clerk of the court. The record includes no document filed with this money. However, at a hearing on September 23, the same day the money was filed with the clerk, counsel for Husband "passed to the Court . . . receipts from the clerk's office" for the $185,000. The court asked if Husband was tendering the $185,000, and counsel replied affirmatively. At the end of that hearing, the trial court noted that Husband had tendered the money, and the court was grateful that he had done so, because it gave Wife "more options than she would have had." The court continued, "I do not consider it to be investment funds. I consider this to be funds that can be used to purchase for her a residence" or for other purposes. These remarks were made in the context of discussing assets available to Wife to pay attorneys fees and costs. The court also noted that, as a result of his paying the purchase price of the house, Husband could continue to live in the house.

The final order also took notice of this payment to the clerk:

> And from the hearing of September 23, 1994, the Court having found that the $185,000.00 paid into the Clerk of the Court by the Husband on the date of the hearing, in payment of the Wife's interest in the Nichol Lane property, is a division of property, not investment or discretionary funds for use in payment of attorney's fees by Wife.

After various postjudgment motions and rulings, Husband appealed the final order of the court. Among the rulings Husband appealed was the trial court's award of the home. Husband then filed a Motion to Stay Execution, asking the trial court to stay execution on enumerated portions of

the appealed order without bond or, alternatively, to stay execution upon posting of bond set by the court. That Motion included the following:

> In the Judgment, this Court awarded Plaintiff the residence located at 1210 Nichol Lane, Nashville, Tennessee, and gave the Defendant the right to purchase it from her for $185,000.00. Defendant exercised that right and deposited $185,000.00 for that purpose with the Clerk's office where it remains at the present time. As a result, no bond should be required to stay execution and enforcement of that portion of the Judgment that awards Plaintiff the said $185,000.00.
>
> ***
>
> Defendant also requests that pursuant to Rule 40 of the Local Rules of Practice,[1] this Court order all funds currently on deposit with the Clerk in this matter be invested pending the outcome of any appeal.

The trial court entered an order on February 25, 1995, staying execution and enforcement of that portion of the final judgment awarding the Nichol Lane house, which the court found had been converted to $185,000 in cash on deposit with the clerk. The court required no bond to secure this portion of the judgment. The court did not address the request that the funds be deposited at interest for the benefit of the parties.[2]

On March 27, 1997, the Court of Appeals issued an opinion affirming the trial court (with some modifications not relevant to this appeal) and remanding the case. This court affirmed the award to Wife of $185,000 as distribution of marital property and alimony *in solido*. The opinion notes that the trial court had given Husband the option of conveying the house to Wife or purchasing it for $185,000, and stated that Husband had exercised the right to purchase the house by paying the purchase price into court. *See Turner v. Turner*, 1997 WL 136448 at *10.

In October 1998, Wife filed a motion seeking 10% interest on the judgment amounts, relying on Tenn. Code Ann. §§ 47-14-121 and -122. Husband responded that Tenn. R. Civ. P. 67.03 relieved him from paying interest because he had paid the amount awarded into court. After a hearing, the trial court decided that Husband was responsible for postjudgment interest on the $185,000. Husband then filed an unsuccessful motion to alter and amend judgment. This appeal ensued.[3]

---

[1] Rule 40 of the Local Rules of Practice in effect at the time provided, "Funds paid into court are not invested for the benefit of the parties unless the court or a party so directs."

[2] The order was submitted by counsel for Husband.

[3] The trial court ordered that the funds be placed in an interest bearing account pending this appeal.

Because the issue before us is a matter of law, rather than fact, our standard of review is *de novo* with no presumption of correctness. *See Solomon v. First American Nat'l Bank,* 774 S.W.2d 935, 940 (Tenn. Ct. App. 1989).

## I.

Tennessee law requires the payment of postjudgment interest. "Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for new trial."[4] Tenn. Code Ann. § 47-14-122 (1995). Thus, the allowance of interest is based upon statute, and this postjudgment interest statute is mandatory. *See Inman v. Inman*, 840 S.W.2d 927, 932 (Tenn. Ct. App. 1992); *Bedwell v. Bedwell,* 774 S.W.2d 953, 956 (Tenn. Ct. App.1989); *Stinnett v. Stinnett,* No. E2000-001210-COA-R3-CV, 2000 WL 1273880 at *4 (Tenn. Ct. App. Sept. 7, 2000) (no Tenn. R. App. P. 11 application filed).

Interest is defined in Tenn. Code Ann. § 47-14-102(7) as "compensation for the use or detention of, or forbearance to collect, money over a period of time." A party's right to postjudgment interest is based on that party's entitlement to use the proceeds of the judgment after the award. *See West American Ins. Co. v. Montgomery*, 861 S.W.2d 230, 232 (Tenn. 1993). "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835-36, 110 S. Ct. 1570, 1576, 108 L.Ed.2d 842 (1990) (quoting *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1280 (3d Cir.1987)); *see also Lucius v. City of Memphis*, 925 S.W.2d 522, 526 (Tenn. 1996).

Wife was awarded the house, and Husband exercised his option to purchase the house from her for $185,000. Both the trial and appellate courts recognized this transaction as purchase of the house by Husband and conversion of the award of the house into an award of the purchase price. During the original appeal, Husband retained the house, but Wife did not receive the money. Thus, she did not have use of either the house or the money for its purchase.

## II.

In *Underwood v. Liberty Mut. Ins. Co.*, 782 S.W.2d 175 (Tenn.1989), our Supreme Court considered whether postjudgment interest was owed by an insurance carrier who paid into the clerk's office the amount of a judgment in a worker's compensation case where the employee appealed.

> Had the employer simply tendered the funds into court unconditionally in satisfaction
> of the judgment, we are of the opinion that no further interest would accrue under the

---

[4]Tenn. Code Ann. § 47-14-121 computes the interest rate on judgments at 10% per annum, except as may be otherwise provided or permitted by statute, "provided, that where judgment is based on a note, contract, or other writing fixing a rate of interest within the limits provided in § 47-14-103 for that particular category of transaction, the judgment shall bear interest at the rate so fixed."

statute [post judgment interest accruing on appeal in worker's compensation cases].[5] The clerks of the trial courts are expressly authorized by law to receive the amount of any judgment or decree rendered in the courts of which they are clerks, either before or after the issuance of execution thereon. T.C.A. § 18-1-108(5).

In tendering the funds into court, however, the insurance carrier did not specifically pay them in satisfaction of the judgment. The carrier expressly stated that it was attempting to limit its liability for interest on the judgment . . . and it moved the court to direct that the funds be held in an interest-bearing account . . . pending final decision of the Supreme Court regarding the liability of the insurance carrier.

It is apparent from this tender of judgment that the insurance carrier did not contemplate payment of the funds directly to the appellant, but rather it contemplated that the funds would be held in court pending the appeal.

*Underwood,* 782 S.W.2d at 176-77.

Although the employee initiated the appeal in *Underwood*, the carrier also raised issues seeking to reduce the judgment. Based on this and the other facts set out above, the Court determined that the insurance carrier intended the payment into court "not as a complete satisfaction of the judgment, but as a sort of informal 'stay' solely for the purpose of stopping the accrual of interest, except such interest as might accrue on the invested funds."[6] *Id.* at 177. The Court found that the insurer stayed the judgment and was, therefore, liable for interest until the judgment was satisfied. The court indicated that a non-appealing defendant could stop interest on the judgment by paying the judgment to the plaintiff directly or by making an unconditional tender of the funds to the clerk in satisfaction of the judgment.[7] "Where the insurance carrier obtains an order that the funds be held in court pending the appeal, however, or where it otherwise obtains a formal or informal stay of execution, then interest should accrue on the unpaid judgment until the case is disposed of in the appellate court, unless the parties agree otherwise." *Id.*

_____

[5]The statute relied on in *Underwood* was specific to interest on appealed judgments in worker's compensation cases and provided that "interest on the judgment or decree shall be computed from the date that the judgment or decree is entered" at a rate specified in the statute. Because the language of this statute is so similar to Tenn. Code Ann. § 47-14-122, in that both mandate accrual of interest from the date of judgment, the reasoning of the court in *Underwood* applies to other postjudgment situations.

[6]The court styled this an "informal stay" because no formal stay under Tenn. R. Civ. P. 62 had been requested.

[7]In reaching this conclusion, the Court stated, "Judgments may be satisfied and extinguished by payment to the clerk of the court in legal tender. *See* 16 TENN. JUR. *Judgments and Decrees* § 66 (1984). Ordinarily, where an unconditional tender has been made to a creditor, interest no longer accrues thereon. *See* 23 TENN. JUR. *Tender* § 4 (1984)." *Underwood,* 782 S.W.2d at 177.

*Underwood* enunciates the rule that paying a judgment into court does not relieve a party from the statutorily mandated postjudgment interest unless the payment is made in unconditional satisfaction of the judgment. In such circumstances, the party due the judgment may then obtain the money and cannot be said to be denied the use of it. Under this reasoning, Husband would be liable for postjudgment interest because he did not tender the funds unconditionally or in satisfaction of the judgment. Instead, he requested and obtained a stay of execution on the judgment pending the outcome of his appeal. He asked that the money on deposit be used as a substitute for an appeal bond, and he asked that it be invested in an interest-bearing account by the clerk. It was not his intent that Wife receive the money immediately in satisfaction of the judgment; to the contrary, he prevented her from obtaining it by execution and challenged her right to it on appeal, thereby depriving Wife of its use during the appeal.

Husband, however, maintains that Tenn. R. Civ. P. 67, as it existed when he filed his motion to stay execution, eliminated his liability for postjudgment interest which would otherwise have accrued under Tenn. Code Ann. § 47-14-122. He argues that there is a conflict between Rule 67 and Tennessee's postjudgment interest statutes, Tenn. Code Ann. §§ 47-14-121 and -122, and that the conflict must be resolved by deferring to Rule 67. Husband bases his argument on the language of Tenn. R. Civ. P. 67.03:

> Money Paid into Court. Where money is paid into court to abide the result of any legal proceeding, the judge may order it deposited in a designated state or national bank or savings and loan institution, to the credit of the court in the action or proceeding in which the money was paid. The money so deposited, with interest if any, shall be disbursed only upon the check of the clerk of the court pursuant to order of the court and in favor of the person to whom the order directs the payment to be made. Upon making a deposit in court a party shall not be liable for further interest on the sum deposited.

After the judgment in this case, Rule 67.04 was added.[8] Rule 67.04 states: "This rule is inapplicable to post-judgment interest." The advisory commission comment states, "The losing defendant cannot avoid the 10% interest rate under T.C.A. § 47-14-222 by depositing the verdict amount into the trial court clerk's office."

In granting Wife's request for postjudgment interest, the trial court relied on *Gardner v. Steinforth*, No. 01A01-9405-CR-00233, 1994 WL 581467 (Tenn. Ct. App. Oct. 21, 1994) (no Tenn. R. App. P. 11 application filed), a case which explicitly declined to endorse the proposition that a deposit made pursuant to Tenn. R. Civ. P. 67.03 applied to the payment of judgments. In fact, in *Gardner,* this court questioned the application of Rule 67.03 to postjudgment interest even before Rule 67.04 clarified the issue. *See Gardner*, 1994 WL 581467 at *1. In *Gardner*, a personal injury case, the jury returned a verdict for the plaintiff. Before the judgment was entered and without notice to the plaintiff or the court, the defendant paid the amount of the verdict, $40,000, to the clerk of

---

[8]The amendment was effective on July 1, 1998.

the court and proceeded to appeal. The defendant did not move to have the funds placed in an interest bearing account. After the defendant's appeal resulted in a affirmance of the trial court's judgment, the plaintiff filed a motion to withdraw the $40,000 the defendant had deposited with the clerk and for postjudgment interest on that amount. The trial court denied the request for postjudgment interest and the plaintiff appealed. On appeal, the defendant argued that the last sentence of Rule 67.03 ("[u]pon making a deposit in court a party shall not be liable for further interest on the sum deposited") absolved him of the obligation to pay interest on the judgment. This court responded:

> We disagree for two reasons. First, even if the rule applies to the payment of judgments--a conclusion we do not endorse--in order for the rule to have the effect sought by the defendant, the other parts of the rule must be followed. Section 67.01 provided that a party may deposit all or part of the sum sought in the litigation "upon notice to every other party and by leave of court." We think that provision also applies to section 67.03--and for good reason. The reason being that it avoids situations like this one. If the plaintiffs and the court had been aware of the defendant's action, the proper steps could have been taken to protect the rights of all parties.
>
> Second, the statute providing for post-judgment interest is mandatory, *Bedwell v. Bedwell,* 774 S.W.2d 953 (Tenn.App.1989), and our Supreme Court has said that the only way to stop interest running under an analogous statute [Tenn. Code Ann. § 50-6-225(h)] is to make an unconditional tender in satisfaction of the judgment. *Underwood v. Liberty Mut. Ins. Co.*, 782 S.W.2d 175 (Tenn.1989). The defendant did not make an unconditional tender in satisfaction of the judgment. The judgment had not been entered when the defendant deposited the money, and when finally entered, the judgment assessed the costs against the defendant. Thus, the sum deposited was not sufficient to satisfy the judgment. In addition, the defendant appealed the original judgment, obviously hoping to avoid having to pay the judgment at all, rendering his tender less than unconditional.

*Gardner*, 1994 WL 581467 at *1-2.

The decision in *Gardner* was based, primarily, on the *Underwood* rule: the only way to avoid liability for postjudgment interest is to satisfy the judgment. While this court was not required to decide whether Rule 67.03 created an exception to that rule, the clear implication of the opinion is that it did not. For a number of reasons, we agree.

First, the *Underwood* decision sets out the clear rule of law, is consistent with related well-settled principles, and is applicable to situations where a statute mandates postjudgment interest. Second, when placed in the context of the entire Rule 67, Rule 67.03 cannot be interpreted to apply to relieve a defendant of postjudgment statutory interest. Rule 67 must be read as a whole, and when it is so read, it clearly applies only to deposits pending action in the trial court.

Frequently during the course of civil actions circumstances will arise where one may be permitted or required to deposit certain property or funds in the court for the protection or convenience of the parties involved in the litigation. Tennessee Rule 67 provides the procedure for these deposits in court.

Robert M. Williams, Jr., Comment, *Tennessee Rules of Civil Procedure; Part IV: Forms of Relief*, 4 MEM. ST. L. REV. 400, 416 (1974).

Rules 67.01 and 67.02 deal with voluntary and involuntary deposit into court during the pendency of an action wherein the relief sought is disposition of money or property. Under 67.01, a person in possession of the money or property disputed in the lawsuit may simply deposit it with the court, upon leave, akin to an interpleader action. *See* ROBERT BANKS, JR. AND JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE §4-10(c) (1999). Rule 67.02 allows the court to order the holder of the money or property to deposit it into court when the property is the subject of the litigation and the holder claims no interest. *See id.* at § 4-10(e). To interpret Rule 67.03 consistently with these two sections, that Rule merely provides a mechanism for interest to the party finally awarded property, where that money or property has been deposited under Rule 67.01 or Rule 67.02. In other words, Rule 67.03 merely describes what happens after money is deposited in court pursuant to Rule 67.01 or 67.02. *See* Williams, 4 MEM. ST. L. REV. at 418. The deposit into court by Husband herein was not made for the purposes set out in Rule 67.01 or Rule 67.02. Husband does not assert that it was.

Rule 67, then, governs deposits made pending determination by the trial court of the right to the property or money. *See* Tenn. R. Civ. P. 1 (rules apply in circuit and chancery courts). In that situation, Rule 67.03's initial condition that it applies only to money deposited "to abide the result of any legal proceeding" means "to wait for."[9] *See* BLACK'S LAW DICTIONARY at 7 (6th ed. 1990). Thus, that sentence of Rule 67.03 which relieves a depositing party of interest can only apply to any pre-judgment interest which may be awarded by the trial court when it decides who is entitled to the money or property deposited. This provision is intended to encourage voluntary deposits under Rule 67.01 and to lessen costs to the depositor under Rule 67.02. *See* Williams, 4 MEM. ST. L. REV. at 419.

As noted earlier, Rule 67 has been amended to make it clear that Rule 67.03 is inapplicable to postjudgment interest, an interpretation we consider consistent with the rule as originally drafted.

---

[9] Husband's reliance on Rule 67.03 appears to be based on an interpretation of 67.03 as applicable to postjudgment situations unrelated to the other parts of Rule 67. Even if we were to consider Rule 67.03 independently of the other parts of Rule 67, and apply it to a deposit in a postjudgment situation, we must then interpret "to abide" as something other than to wait for the judgment. A longstanding definition of "abide" relates directly to the postjudgment situation: "to accept the consequences of; to rest satisfied with." BLACK'S LAW DICTIONARY at 7. Specifically, with regard to a judgment or order, it means to perform it or to conform to it. *See Getz v. Johnston*, 125 A. 689, 691 (Md. 1924). "[T]o abide and satisfy a judgment or order is to perform, execute, conform to, and satisfy it; that is to say, to carry it into effect." *Erickson v. Elder*, 25 N.W. 804, 804 (Minn. 1885). Therefore, a deposit into court to "abide" a judgment is the same as a deposit made in unconditional satisfaction of the judgment. Such was not the case here.

One treatise posits that this amendment was a response to possible interpretations of *Gardner*, stating that *Gardner* left open the possibility that a defendant who complied with the notice and leave of court provisions of Rule 67.01 could avoid the payment of postjudgment interest. *See* BANKS & ENTMAN §4-10(i). The author explains why such a result would be undesirable:

> The problem, however, is that the rate of postjudgment interest is set by statute at 10 percent. Thus, when the market interest rates are lower than 10 percent, the procedure would deprive the plaintiff of the additional interest provided by the statute. In addition, because Rule 67.03 does not require the court to order the funds deposited in an interest-bearing account, the deposit in court might deprive the plaintiff of any interest at all.

*Id.*

We do not believe that Rule 67.03 applies or was intended to apply to postjudgment situations or, more specifically, to relieve a defendant who appeals a judgment and stays execution on that judgment from the postjudgment interest guaranteed to the plaintiff by statute. Husband relies on *Catlett v. Indemnity Ins. Co. of North America*, 914 S.W. 2d 76 (Tenn. 1995) for his interpretation of Rule 67.03. We agree that certain language in that opinion supports his argument. In *Catlett*, an employer paid a workers compensation judgment to the plaintiff, but appealed that judgment. The judgment was reversed on appeal, and the employer sought to recover the money paid. The Supreme Court determined that the payment had been made pursuant to the trial court's order and was made pending appeal. Therefore, the court found that such payment was not an unconditional and irrevocable payment in satisfaction of the trial court's judgment and granted the employer judgment for recovery of the money. *See Catlett,* 914 S.W.2d at 79. This holding is consistent with *Underwood* and with the reasoning adopted in this opinion.

While the *Catlett* court specifically stated, "[W]e are not concerned with accrual of interest in this case and do not suggest that the employer's actions here would affect those rights of plaintiff," the court nonetheless included in its opinion a statement, admittedly unnecessary for resolution of the issues before it, upon which Husband relies. The Court stated, "The employer should have exercised its options under Rule 62 or Rule 67 of the Tennessee Rules of Civil Procedure to avoid execution on the judgment or accrual of interest." *Id*. at 79. We do not consider this sentence, however, as an indication that the Court intended to abandon the rule established in *Underwood*. To the contrary, the *Catlett* opinion relies upon *Underwood* and bases its determinative analysis on it.

Therefore, like the trial court herein, we rely on the holdings and principles established in *Underwood* and *Gardner*. *See also Stinnett*, 2000 WL 1273880 at \*4. Because Husband did not deposit the $185,000 in unconditional satisfaction of the judgment and, in fact, sought and obtained a stay of execution on the judgment, thereby depriving Wife of the use of the funds during his appeal, Wife is entitled by Tenn. Code Ann. § 47-14-122 to postjudgment interest.

The record indicates that the trial court ordered the money deposited at interest when ruling on Wife's motion for postjudgment interest. To the extent any such interest was earned, the Wife is not entitled to that interest in addition to the ten percent statutory interest awarded her. The trial court shall enter an order appropriately distributing any such accrued interest.

The judgment of the trial court is affirmed. This case is remanded for any further proceedings which may be necessary. Costs of this appeal are to be taxed to Husband, the Appellee, for which execution may issue.

_____
PATRICIA J. COTTRELL, JUDGE